RADER, Circuit Judge,
concurring.
I agree with the court’s judgment in this matter, with respect to both Toyota’s appeal and Paice’s cross-appeal. But, I write separately to express my opinion that in remanding to the district court for reevaluation of the “ongoing royalty” rate, this court should do more than suggest that “the district court may wish to allow the parties to negotiate a license amongst themselves ... before imposing an ongoing royalty.” Op. at 1315 (emphasis added). Instead, this court should require the district court to remand this issue to the parties, or to obtain the permission of both parties before setting the ongoing royalty rate itself.
District courts have considerable discretion in crafting equitable remedies, and in a limited number of cases, as here, imposition of an ongoing royalty may be appropriate. Nonetheless, calling a compulsory license an “ongoing royalty” does not make it any less a compulsory license. To avoid many of the disruptive implications of a royalty imposed as an alternative to the preferred remedy of exclusion, the trial court’s discretion should not reach so far as to deny the parties a formal opportunity to set the terms of a royalty on their own. With such an opportunity in place, an ongoing royalty would be an ongoing royalty, not a compulsory license.
In this case, because the court imposed an ongoing royalty on the parties sua sponte after denying injunctive relief, the parties had no meaningful chance to present evidence to the district court on an appropriate royalty rate to compensate Pa-ice for Toyota’s future acts of infringement. Evidence and argument on royalty rates were, of course, presented during the course of the trial, for the purposes of *1317 assessing damages for Toyota’s past infringement. But pre-suit and post-judgment acts of infringement are distinct, and may warrant different royalty rates given the change in the parties’ legal relationship and other factors. When given choices between taking additional evidence or not, and between remanding to the parties or not, a district court may prefer the simplest course — impose its own compulsory license. This simplest course, however, affords the parties the least chance to inform the court of potential changes in the market or other circumstances that might affect the royalty rate reaching into the future.
In most cases, the patentee and the infringer should receive an opportunity at least to set license terms that will apply to post-suit use of the patented invention. This general principle has deep roots in both law and policy. Projecting the costs to be incurred for what would otherwise be future acts of infringement is necessarily a speculative exercise, even for the most stable markets and technologies. As licenses are driven largely by business objectives, the parties to a license are better situated than the courts to arrive at fair and efficient terms. After all, it is the parties, rather than the court, that will be bound by the terms of the royalty. Particularly in the case of the patentee, who has proven infringement of its property right, an opportunity to negotiate its own ongoing royalty is a minimal protection for its rights extending for the remainder of the patent term.
For these reasons, I would require the district court to allow the parties an opportunity to set the ongoing royalty rate, or, at least to secure the permission of both parties before setting the rate itself. Of course, if the parties cannot reach agreement, the court would retain jurisdiction to impose a reasonable royalty to remedy the past and ongoing infringement.